# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

CHILO HERNANDEZ,

      Plaintiff,

v.                                        CASE NO. 19-3095-SAC

CORIZON, INC., et al.,

      Defendants.

## MEMORANDUM AND ORDER
## AND ORDER TO SHOW CAUSE

Plaintiff Chilo Hernandez is hereby required to show good cause, in writing, to the Honorable Sam A. Crow, United States District Judge, why Counts 1, 7, 8, 9 and 10 of his Complaint should not be dismissed due to the deficiencies that are discussed herein.

## I. Nature of the Matter before the Court

Plaintiff brings this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff is incarcerated at the Hutchinson Correctional Facility in Hutchinson, Kansas ("HCF"). The Court granted Plaintiff leave to proceed *in forma pauperis*. On June 11, 2019, the Court entered an Order (Doc. 6) staying this case pending dismissal of Plaintiff's state court action. On August 12, 2019, Plaintiff filed a Motion to Lift Stay (Doc. 7) stating that his state court case has been dismissed. The Court will grant the motion and lift the stay in this case.

Plaintiff alleges that Defendants failed to provide him with proper medical care. Plaintiff brings his claims under § 1983 and asks the Court to exercise supplemental jurisdiction over his state law claims for medical malpractice. Plaintiff alleges that he was diagnosed with Ulcerative Colitis ("UC") in 2013 while incarcerated at the Ellsworth Correctional Facility, and was prescribed Colazal, which did not help with his symptoms. Sometime in 2014, Plaintiff was

1

transferred to the Lansing Correctional Facility and was prescribed Sulfasalazine, which not only did not help, but made his symptoms worse. After months of pain and suffering and experiencing up to twenty bloody stools per day, Plaintiff was eventually put on a gluten-free diet, which helped with his symptoms.

Plaintiff was transferred to El Dorado Correctional Facility and around September to December of 2016, Corizon employees took Plaintiff off of his gluten-free diet and refused to put him back on the diet. Plaintiff then began to have stomach problems, including experiencing up to eighteen bloody stools per day, mucus in his stools, irritable bowl syndrome, leaky gut, dizziness, difficulty concentrating, and undigested food in his stools. On October 31, 2016, while being seen by Dr. Sayeed, a Corizon employee, Plaintiff begged to be put back on the gluten-free diet because it was the only thing that brought some kind of relief. Dr. Sayeed told Plaintiff that he did not care, he was not going to do anything for Plaintiff, and he kicked Plaintiff out of the sick call room.

From September to November of 2016, Dr. Harod and Dr. Sayeed, both Corizon employees, wanted to put Plaintiff back on Sulfasalazine. Plaintiff informed both doctors that he had already been prescribed this drug and it made Plaintiff's symptoms worse. Plaintiff begged both doctors to put him back on a gluten-free diet. Both doctors refused to put him on the diet and refused to prescribe a different medication. The doctors wanted to prescribe Sulfasalazine to document the "trial and failure," even though it had already been documented.

Around December of 2016, a nurse at El Dorado Correctional Facility eventually put Plaintiff back on the gluten-free diet. Plaintiff was later transferred to HCF, and around June or July of 2017, Plaintiff was seen by Dr. Monir, who wanted to prescribe Colazal for Plaintiff. Plaintiff informed him that it did not work and asked if he could try Entyvio or Humira.

Dr. Monir told Plaintiff that he had not been on Colazal before and to try it and if it did not work then they would put Plaintiff on either Entyvio or Humira. Plaintiff had no choice but to take the Colazal, knowing that it did not work before. After a couple of weeks, Plaintiff started complaining because he was having bloody stools, mucus in his stools, coughs early in the morning, black outs, difficulty concentrating and focusing, irritable bowl syndrome, and many other symptoms.

Around September of 2017, Nancy Ciskey, ARNP, took Plaintiff off Colazal. Plaintiff asked to be prescribed Entyvio or Humira for his UC. Ciskey looked at Plaintiff's medical file and told him that there is nothing in the file about a UC diagnosis and refused to prescribe Entyvio or Humira. Plaintiff informed Ciskey of all of his symptoms, and she told Plaintiff that all she could do was to give him allergy medication (for a cold) and heart burn medication.

During November and December of 2017, Plaintiff sought treatment and was ignored and not seen or referred to anyone for treatment. Plaintiff began having problems and started putting in sick calls from September 13, 2018 to October 23, 2018. Plaintiff was prescribed a liquid diet and was prescribed Prednisone from September 13 to September 26, 2018, which worked for about a week, and then all of Plaintiff's symptoms returned. Plaintiff began putting in more sick calls, and on October 24, 2018, he was prescribed Imodium, a medication for diarrhea, which Plaintiff declined.

On October 29, 2018, Plaintiff was seen by ARNP Ciskey, who sent Plaintiff to the clinic for twenty-four hours to do lab work and take stool samples. On October 20, 2018, Dr. Monir took Plaintiff's vital signs and told Plaintiff he would be putting Plaintiff on medication, but he never did. Plaintiff began experiencing problems again and was seen by Ciskey on December 14, 2018. She prescribed Prednisone again, which brought Plaintiff no relief. On February 21,

2019, Plaintiff was sent to a doctor for a colonoscopy. The next day, Plaintiff was again prescribed Balsalazide/Colazal, a medication that has never worked. He took it for three days, his symptoms returned, and he asked to be taken off the medication. On March 13, 2019, Plaintiff was forced to go to the clinic by Dr. Monir, who wanted to force Plaintiff to take Colazal again. Plaintiff declined the medication. For years Plaintiff has suffered physical pain and emotional pain, and has made numerous attempts to receive treatment for his UC.

Plaintiff names as Defendants Corizon, Inc., Doctor Monir and ARNP Ciskey. Plaintiff seeks declaratory relief, injunctive relief, compensatory damages, and punitive damages.

## II. Statutory Screening of Prisoner Complaints

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or an employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if a plaintiff has raised claims that are legally frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1)–(2).

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins,* 487 U.S. 42, 48 (1988) (citations omitted); *Northington v. Jackson*, 973 F.2d 1518, 1523 (10th Cir. 1992). A court liberally construes a pro se complaint and applies "less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). In addition, the court accepts all well-pleaded allegations in the complaint as true. *Anderson v. Blake*, 469 F.3d 910, 913 (10th Cir. 2006). On the other hand, "when the allegations in a complaint, however true, could not raise

a claim of entitlement to relief," dismissal is appropriate. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 558 (2007).

A pro se litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555 (citations omitted). The complaint's "factual allegations must be enough to raise a right to relief above the speculative level" and "to state a claim to relief that is plausible on its face." *Id.* at 555, 570.

The Tenth Circuit Court of Appeals has explained "that, to state a claim in federal court, a complaint must explain what each defendant did to [the *pro se* plaintiff]; when the defendant did it; how the defendant's action harmed [the plaintiff]; and, what specific legal right the plaintiff believes the defendant violated." *Nasious v. Two Unknown B.I.C.E. Agents*, 492 F.3d 1158, 1163 (10th Cir. 2007). The court "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citation omitted).

The Tenth Circuit has pointed out that the Supreme Court's decisions in *Twombly* and *Erickson* gave rise to a new standard of review for § 1915(e)(2)(B)(ii) dismissals. *See Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007) (citations omitted); *see also Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009). As a result, courts "look to the specific allegations in the complaint to determine whether they plausibly support a legal claim for relief." *Kay*, 500 F.3d at 1218 (citation omitted). Under this new standard, "a plaintiff must 'nudge his claims across the line from conceivable to plausible.'" *Smith*, 561 F.3d at 1098 (citation omitted). "Plausible" in

this context does not mean "likely to be true," but rather refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent," then the plaintiff has not "nudged [his] claims across the line from conceivable to plausible." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (citing *Twombly*, 127 S. Ct. at 1974).

## III. DISCUSSION

### 1. Eighth Amendment - Denial of Medical Care

The Eighth Amendment guarantees a prisoner the right to be free from cruel and unusual punishment. "[D]eliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' . . . proscribed by the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (citation omitted).

The "deliberate indifference" standard includes both an objective and a subjective component. *Martinez v. Garden*, 430 F.3d 1302, 1304 (10th Cir. 2005) (citation omitted). In the objective analysis, the deprivation must be "sufficiently serious," and the inmate must show the presence of a "serious medical need," that is "a serious illness or injury." *Estelle*, 429 U.S. at 104, 105; *Farmer v. Brennan*, 511 U.S. 825, 834 (1994), *Martinez*, 430 F.3d at 1304 (citation omitted). A serious medical need includes "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Martinez*, 430 F.3d at 1304 (quoting *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000)).

"The subjective component is met if a prison official knows of and disregards an excessive risk to inmate health or safety." *Id*. (quoting *Sealock*, 218 F.3d at 1209). In measuring a prison official's state of mind, "the official must both be aware of facts from which the inference

6

could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 1305 (quoting *Riddle v. Mondragon*, 83 F.3d 1197, 1204 (10th Cir. 1996)).

A mere difference of opinion between the inmate and prison medical personnel regarding diagnosis or reasonable treatment does not constitute cruel and unusual punishment. *See Estelle*, 429 U.S. at 106–07; *see also Coppinger v. Townsend*, 398 F.2d 392, 394 (10th Cir. 1968) (prisoner's right is to medical care—not to type or scope of medical care he desires and difference of opinion between a physician and a patient does not give rise to a constitutional right or sustain a claim under § 1983).

The Court finds that the proper processing of Plaintiff's medical claims cannot be achieved without additional information from appropriate officials of HCF. *See Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1978); *see also Hall v. Bellmon*, 935 F.2d 1106 (10th Cir. 1991). Accordingly, the Court orders the appropriate officials of HCF to prepare and file a *Martinez* Report. Once the report has been received, the Court can properly screen Plaintiff's claims under 28 U.S.C. § 1915.

**2. Statute of Limitations**

Plaintiff alleges in Counts 7, 8, 9 and 10, that he was denied proper medical care from September to December of 2016. The statute of limitations applicable to § 1983 actions is determined from looking at the appropriate state statute of limitations and tolling principles. *See Hardin v. Straub*, 490 U.S. 536, 539 (1989). "The forum state's statute of limitations for personal injury actions governs civil rights claims under both 42 U.S.C. § 1981 and § 1983. . . . In Kansas, that is the two-year statute of limitations in Kan. Stat. Ann. § 60–513(a)." *Brown v. Unified Sch. Dist. 501, Topeka Pub. Sch.*, 465 F.3d 1184, 1188 (10th Cir. 2006) (citations omitted). The same two-year statute of limitations governs actions under 42 U.S.C. § 1985. *See Alexander v.*

*Oklahoma*, 382 F.3d 1206, 1212 (10th Cir.), *rehearing denied*, 391 F.3d 1155 (10th Cir. 2004), *cert. denied*, 544 U.S. 1044 (2005).

While state law governs the length of the limitations period and tolling issues, "the accrual date of a § 1983 cause of action is a question of federal law." *Wallace v. Kato*, 549 U.S. 384, 388 (2007). Under federal law, the claim accrues "when the plaintiff has a complete and present cause of action." *Id.* (internal quotation marks and citation omitted). In other words, "[a] § 1983 action accrues when facts that would support a cause of action are or should be apparent." *Fogle v. Pierson*, 435 F.3d 1252, 1258 (10th Cir. 2006) (internal quotation marks and citation omitted), *cert. denied* 549 U.S. 1059 (2006). A district court may dismiss a complaint filed by an indigent plaintiff if it is patently clear from the allegations as tendered that the action is barred by the statute of limitations. *Id*. at 1258–59; *see also Jones v. Bock*, 549 U.S. 199, 214 (2007); *Hawkins v. Lemons*, No. 09-3116-SAC, 2009 WL 2475130, at *2 (D. Kan. Aug. 12, 2009).

It plainly appears from the face of the Complaint that Plaintiff's claims in Counts 7, 8, 9 and 10, are subject to dismissal as barred by the applicable two-year statute of limitations. Plaintiff filed his Complaint on May 20, 2019. Plaintiff's alleged violations in those Counts occurred in September through December of 2016. It thus appears that any events or acts of Defendants taken in connection with Plaintiff's claims in those Counts took place more than two years prior to the filing of Plaintiff's Complaint and are time-barred. *See Fratus v. Deland*, 49 F.3d 673, 674-75 (10th Cir. 1995) (district court may consider affirmative defenses *sua sponte* when the defense is obvious from the face of the complaint and no further factual record is required to be developed). Plaintiff has not alleged facts suggesting that he would be entitled to statutory or equitable tolling. Plaintiff should show good cause why Counts 7, 8, 9 and 10, should not be dismissed as barred by the statute of limitations.

### 3. Defendant Corizon, Inc.

Plaintiff names Corizon, Inc. as a defendant. Plaintiff's § 1983 claim against Corizon is set forth in Count 1 of his Complaint. In the Tenth Circuit, "to hold a corporation liable under § 1983 for employee misconduct, a plaintiff must demonstrate the existence of the same sort of custom or policy that permits imposition of liability against municipalities under *Monell*." *Wishneski v. Andrade*, 572 F. App'x 563, 567 (2014) (unpublished) (citations omitted). Plaintiff's § 1983 claim against Defendant Corizon, Inc., is subject to dismissal because Plaintiff has not alleged the requisite causative custom or policy. Plaintiff should show good cause why Count 1 should not be dismissed.

### 4. Motion for Preliminary Injunction

Plaintiff filed a Motion for Preliminary Injunction (Doc. 4), asking the Court to ensure that he receives proper medical care. Plaintiff relies on the facts set forth in his Complaint and states that he was diagnosed with UC in 2013, and the two medications that Defendants keep prescribing have not worked or have made his symptoms worse. Plaintiff alleges that despite years of complaining to Defendants, they refuse to take a different course of treatment.

To obtain a preliminary injunction, the moving party must demonstrate four things: (1) a likelihood of success on the merits; (2) a likelihood that the movant will suffer irreparable harm in the absence of preliminary relief; (3) that the balance of the equities tip in the movant's favor; and (4) that the injunction is in the public interest. *Little v. Jones*, 607 F.3d 1245, 1251 (10th Cir. 2010). "[A] showing of probable irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction." *Dominion Video Satellite, Inc. v. Echostar Satellite Corp.,* 356 F.3d 1256, 1260 (10th Cir. 2004).

A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). A preliminary injunction is appropriate only when the movant's right to relief is clear and unequivocal. *Schrier v. Univ. of Colo.*, 427 F.3d 1253, 1258 (10th Cir. 2005). Moreover, a federal court considering a motion for preliminary injunctive relief affecting the conditions of a prisoner's confinement must give "substantial weight to any adverse impact on public safety" and on prison operation. 18 U.S.C. § 3626(a)(2). Finally, a mandatory preliminary injunction, such as the one sought by Plaintiff, which requires the non-moving party to take affirmative action, is disfavored and therefore requires the moving party to make a heightened showing of the four factors above. *Little*, 607 F.3d at 1251. Because preliminary injunctions and TRO's are drastic remedies—"the exception rather than the rule—plaintiffs must show that they are clearly and unequivocally entitled to relief." *Adrian v. Westar Energy, Inc.*, No. 11-1265-KHV, 2011 WL 6026148, at *3 (D. Kan. 2011) (citations omitted).

The Court finds that Plaintiff has not met his burden to make a heightened showing that entry of a preliminary injunction is warranted; he has not demonstrated a likelihood of success on the merits such that his right to relief is clear and unequivocal. The Court has found that the proper processing of Plaintiff's claims cannot be achieved without additional information from appropriate officials of HCF. Accordingly, the Court is ordering the appropriate officials of HCF to prepare and file a *Martinez* Report. Once the report has been received, the Court can properly screen Plaintiff's claims under 28 U.S.C. § 1915.

**IT IS THEREFORE ORDERED THAT** Plaintiff's Motion to Lift Stay (Doc. 7) is **granted**, and the stay in this case is lifted.

**IT IS FURTHER ORDERED** that Plaintiff is granted until **October 4, 2019,** in which to show good cause, in writing, to the Honorable Sam A. Crow, United States District Judge, why Counts 1, 7, 8, 9 and 10 of Plaintiff's Complaint should not be dismissed for the reasons stated herein.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Preliminary Injunction (Doc. 4) is **denied.**

**IT IS FURTHER ORDERED** that**:**

(1) the clerk of the court shall prepare waiver of service forms for Defendants pursuant to Rule 4(d) of the Federal Rules of Civil Procedure, to be served upon Defendants at no cost to Plaintiff. The report required herein shall be filed no later than sixty (60) days from the date of this order, unless the time is extended by the Court. The answer or other responsive pleading shall be filed thirty (30) days after the *Martinez* report is filed.

(2) Officials responsible for the operation of HCF are directed to undertake a review of the subject matter of the Complaint:

    a. To ascertain the facts and circumstances;

    b. To consider whether any action can and should be taken by the institution to resolve the subject matter of the Complaint; and

    c. To determine whether other like complaints, whether pending in this Court or elsewhere, are related to this Complaint and should be considered together.

(3) Upon completion of the review, a written report shall be compiled which shall be filed with the Court and served on Plaintiff. The KDOC must seek leave of the Court if it wishes to file certain exhibits or portions of the report under seal or without service on Plaintiff. Statements of all witnesses shall be in affidavit form. Copies of pertinent rules, regulations,

official documents, and, wherever appropriate, the reports of medical or psychiatric examinations shall be included in the written report. Any recordings related to Plaintiff's claims shall also be included.

(4) Authorization is granted to the officials of HCF to interview all witnesses having knowledge of the facts, including Plaintiff.

(5) No answer or motion addressed to the Complaint shall be filed until the *Martinez* Report required herein has been prepared.

(6) Discovery by Plaintiff shall not commence until Plaintiff has received and reviewed Defendants' answer or response to the Complaint and the report ordered herein. This action is exempted from the requirements imposed under Fed. R. Civ. P. 26(a) and 26(f).

**IT IS FURTHER ORDERED** that the Clerk of Court shall enter KDOC as an interested party on the docket for the limited purpose of preparing the *Martinez* Report ordered herein. Upon the filing of that report, KDOC may move for termination from this action.

Copies of this order shall be transmitted to Plaintiff, to Defendants, and to the Attorney General for the State of Kansas.

**IT IS SO ORDERED.**

**Dated in Topeka, Kansas, on this 6th day of September, 2019.**

> s/   Sam A. Crow
> **SAM A. CROW**
> **U. S. Senior District Judge**