## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

CHILO HERNANDEZ,

     *Plaintiff,*

vs.

CORIZON, INC., ZIAVDDIN MONIR, and
NANCY CISKEY,

     *Defendant.*

Case No. 5:19-cv-03095-EFM-ADM

## MEMORANDUM AND ORDER

Plaintiff Chilo Hernandez has brought claims against defendants Nancy Ciskey, Ziavddin Monir, and Corizon, Inc. ("Corizon") asserting that they violated his Eighth and Fourteenth Amendment rights and committed medical malpractice. Ciskey and Corizon have together filed a Motion for Summary Judgment (Doc. 49). Monir has separately filed his own Motion for Summary Judgment (Doc. 52). Defendants contend that Hernandez has failed to establish the subjective component of deliberate indifference to support his claim that each of them violated his Eighth Amendment rights. Ciskey and Corizon further argue that the Court should decline to exercise supplemental jurisdiction over Hernandez's medical malpractice claims. In contrast, Monir contends that the Court should grant summary judgment to him on the medical malpractice claims because Hernandez fails to rely on expert testimony. For the reasons stated in more detail below, the Court grants both motions.

## I.      Factual and Procedural Background[1]

Since May 2017, Hernandez has been incarcerated at Hutchinson Correctional Facility ("HCF"), having previously served time in custody at several other prisons.  Ciskey, an APRN, and Monir, a doctor, are employees of Corizon, a medical services provider to prisoners at HCF.

Hernandez has a long medical history of ulcerative colitis ("UC"), beginning in February 2011.  UC is an inflammatory bowel disease which causes ulcers and bleeding, frequently resulting in bloody stools.  Although UC is often dormant, changes in diet, such as eating hot and spicy foods, can worsen symptoms.  Drugs commonly used to treat UC include Colazal, Canasa, Asacol, prednisone, and sulfasalazine, along with biologics Humira and Entyvio.

To initially treat UC's symptoms in 2011, Hernandez's first doctor proscribed Colazal, a brand name version of balsalazide.  Colazal is the only formulary drug in its therapeutic category. However, the doctor noted in February, April, and June of 2011 that Hernandez showed an "inadequate clinical response to therapeutic tr[ia]ls" of Colazal regarding the "[treatment] of Ulcerative Colitis."[2]   In response, the doctor soon increased the amount of Colazal because Hernandez continued to experience rectal bleeding.  On top of Colazal, Hernandez was proscribed prednisone in increasing amounts between March 17, 2011 and April 19, 2012.  Furthermore, Hernandez was proscribed Canasa from April 26, 2011 to May 1, 2011 and again from February 3, 2012 to February 19.  Finally, the doctor proscribed Asacol from May 18, 2011 to August 18, 2012.  Monir's affidavit states that Colazal controlled Hernandez's symptoms during this time.

---

[1] Hernandez made many statements of fact in his Responses to Defendants' Motions for Summary Judgment which were unsupported by any admissible evidence. According to Rule 56(c)(1)(A) of the Federal Rules of Civil Procedure, a party must support all assertions of fact with admissible evidence when opposing a motion for summary judgment.  Therefore, Hernandez's unsupported statements of fact will not be considered.

[2] Doc. 53, Ex. 2, at 287–89.

Hernandez tested positive for a gluten allergy on December 16, 2016.  He began a gluten-free diet at some unidentified point.  In February 2017, Hernandez visited a gastroenterologist, Dr. Gaston, claiming that his gluten-free diet lessened his UC symptoms.  Hernandez underwent an EGD and colonoscopy which showed mild chronic inflammatory cells, even though they were inactive at the time.  Dr. Gaston prescribed Colazal to control any flare ups.  Shortly thereafter, Hernandez transferred to HCF.

At HCF, Hernandez again went on a gluten-free diet.  However, on several occasions he bought spicy foods or other items with gluten from the prison's canteen.  Ciskey and Monir witnessed Hernandez stating that he did not eat the items, but rather traded them with other inmates.  Nevertheless, both Ciskey's and Monir's affidavits maintain that Hernandez was noncompliant with his gluten-free diet.  Hernandez failed to contradict their assertion with admissible evidence.

Ciskey first saw Hernandez on September 21, 2017.  Hernandez had stopped taking Colazal shortly before then, claiming it made his symptoms worse.  Ciskey discontinued Hernandez's Colazal prescription.  Despite some reported symptoms and a recent scan showing mild inflammation, Ciskey noted that Hernandez was not experiencing acute distress.  Hernandez requested that Ciskey prescribe Humira or Entyvio, which Ciskey refused.  She then prescribed that he continue his gluten-free diet as well as take Ensure and Protonix.

After complaining of having six to eight bloody stools each day, Hernandez underwent observation for 24 hours on October 29, 2018.  Here, the evidence conflicts.  Monir's affidavit asserts that Hernandez experienced no instances of bloody stools during these observations, while Ciskey's affidavit admits one occasion of a scant amount of blood in the stool.  However, the medical record cited by Hernandez indicates that he had two instances showing between 5ml–10ml

reddish brown liquid in his stool.  Hernandez did not complain of any pain or distress during the observation.  After discharge, Monir instructed Hernandez to stick to his gluten-free diet.

Ciskey saw Hernandez again on December 24, 2018.  Despite his complaints of having several bloody stools each day since August of that year, Hernandez had none of the symptoms of significant blood loss, such as low hemoglobin or anemia.  Ciskey prescribed prednisone for ten days to deal with the bloody stools.  On January 19, 2019, Hernandez complained that the prednisone was unhelpful and requested other medications.  Ciskey then referred Hernandez to Monir.  In response to Hernandez's continuing complaints, Monir referred Hernandez to Dr. Johnson, a gastroenterologist.  Dr. Johnson diagnosed him with "moderately active ulcerative colitis."[3]  Dr. Johnson recommended Colazal as treatment, which Monir thereafter prescribed.  However, Hernandez soon stopped taking Colazal after he complained that it made his symptoms worse.

After further complaints, Hernandez underwent a 72-hour observation in March 2019 to confirm his allegations of several bloody stools each day.  Monir's and Ciskey's affidavits claim that no bloody stools occurred during the observation.  However, the medical record states that Hernandez had "speckles of blood noted in stool" twice, as well as a "scant am[oun]t of bright red blood on toilet paper.[4]  Once again, Hernandez did not complain of pain or distress or exhibit signs of blood loss.  At that time, Hernandez stated that his gluten free diet controlled his UC symptoms.  As of November 27, 2019, Hernandez's condition was stable, and he was not experiencing any flare-ups of his UC.

---

[3] Doc. 53, Ex. 2, at 273.

[4] Doc. 53, Ex. 2, at 206.

In total, the medical staff at HCF documented Hernandez's statements that Colazal was an ineffective treatment for Hernandez's UC nine different times between July 7, 2017 and March 3, 2019.  Hernandez claimed on different occasions that Colazal caused dizziness, difficulty concentrating, headaches, loss of balance, blackouts, and bloody stools.  Throughout that time, Hernandez refused appointments and medications on multiple occasions and bought non-gluten free items from the prison's canteen.

Hernandez commenced this action on May 20, 2019.  On March 3, 2020, Hernandez served a Rule 36 request for admission to Corizon pursuant to the Federal Rules of Civil Procedure. There, Hernandez requested that Corizon admit "[t]hat in order to try alternative medications, trial and failure on preferred medication, (Colazal and Sulfasalazine) has to be documented first."[5] Even though Corizon inadvertently failed to answer, an affidavit from its lawyer states that Corizon would have admitted to having the policy.

Hernandez brought claims against Monir and Ciskey for violations of the Eighth and Fourteenth Amendments and medical malpractice.  Hernandez brought similar claims against Corizon, alleging that Corizon has a preferred medication policy which forced Corizon employees to give him Colazal.  Ciskey and Corizon brought a joint Motion for Summary Judgment, while Monir brought his own Motion for Summary Judgment.

## II.    Legal Standard

Summary judgment is appropriate if the moving party demonstrates that there is no genuine issue as to any material fact, and the movant is entitled to judgment as a matter of law.[6]  Material

---

[5] Doc 57, Ex. 1, at 3.

[6] Fed. R. Civ. P. 56(c).

facts are those that "could have an effect on the outcome of the lawsuit" while a genuine issues of fact require that "a rational jury could find in favor of the nonmoving party on the evidence presented."[7]

The movant bears the initial burden of proof, and must show the lack of evidence on an essential element of the claim.[8] The nonmovant must then bring forth specific facts showing a genuine issue for trial.[9] These facts must be clearly identified through affidavits, deposition transcripts, or incorporated exhibits—conclusory allegations alone cannot survive a motion for summary judgment.[10] The court views all evidence and reasonable inferences in the light most favorable to the party opposing summary judgment.[11] Although the plaintiff proceeds pro se, he must still comply with procedural rules.[12] Courts "cannot act as an advocate for pro se litigants."[13]

Our local rules require that each supporting memorandum or brief regarding summary judgment contain "a concise statement of material facts as to which the movant contends no

---

[7] *Doe v. Univ. of Denver*, 952 F.3d 1182, 1189 (10th Cir. 2020) (quotations and citation omitted).

[8] *Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)).

[9] *Garrison v. Gambro, Inc.*, 428 F.3d 933, 935 (10th Cir. 2005).

[10] *Mitchell v. City of Moore, Okla.*, 218 F.3d 1190, 1197 (10th Cir. 2000) (citing *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998)).

[11] *LifeWise Master Funding v. Telebank*, 374 F.3d 917, 927 (10th Cir. 2004).

[12] *See Szczygiel v. Kansas*, 2016 WL 838935, at *4 (D. Kan. 2016); *see also Murray v. City of Tahlequah*, 312 F.3d 1196, 1199 (10th Cir. 2002) ("[Plaintiff's] pro se status does not relieve him of the obligation to comply with procedural rules.").

[13] *Washington v. Polis*, 800 F. App'x 677, 677 (10th Cir. 2020).

genuine issue exists."[14]  If the opposing party does not contest any of the stated facts with citations to the affidavits or other evidence, the court must deem those statements as admitted.[15]

### III.   Analysis

Hernandez brings actions against Monir, Ciskey, and Corizon under 42 U.S.C. § 1983 under the Eighth and Fourteenth Amendments.  Hernandez also brings claims for medical malpractice under Kansas state law against each of the defendants.  It is unclear whether Hernandez intends to claim that Defendants violated his due process rights or simply recognizes that he can bring his Eighth Amendment claims against state actors through the Fourteenth Amendment. Therefore, the Court will analyze Hernandez's claims under the Eighth Amendment instead of a more generalized due process analysis.[16]

### A.   Eighth Amendment claims

Hernandez has brought multiple Eighth Amendment claims against Ciskey, Monir, and Corizon.  Under the Eighth Amendment, the government has an "obligation to provide medical care for those whom it is punishing by incarceration."[17]  However, "[t]his conclusion does not mean . . . that every claim by a prisoner that he has not received adequate medical treatment states

---

[14] D. Kan. Rule 56.1(a).

[15] *Id.*

[16] *See Whitley v. Albers*, 475 U.S. 312, 327 (1986) ("We think the Eighth Amendment, which is specifically concerned with the unnecessary and wanton infliction of pain in penal institutions, serves as the primary source of substantive protection to convicted prisoners."); *see also Graham v. Connor*, 490 U.S. 386, 395 (1989) (holding specific provisions should guide analysis of unconstitutional actions rather than general due process); *Berry v. City of Muskogee*, 900 F.2d 1489, 1493–94 (10th Cir. 1990) (applying *Graham* to Eighth Amendment claim).

[17] *Estelle v. Gamble*, 429 U.S. 97, 103 (1976); *see Hunt v. Uphoff*, 199 F.3d 1220, 1224 (10th Cir. 1999) ("Prison officials violate the Eighth Amendment's prohibition against cruel and unusual punishment when they act deliberately and indifferently to serious medical needs of prisoners in their custody.").

a violation of the Eighth Amendment."[18]  For example, a mere disagreement between the prisoner and prison medical personnel as to the form of treatment will not give rise to a violation of the Eighth Amendment.[19]  Not even actions which would normally result in medical malpractice satisfy the Eighth Amendment's requirements.[20]  Rather, the inmate must show that state officials have acted with "deliberate indifference to serious medical needs of prisoners."[21]

The deliberate indifference test has both an objective and subjective component.[22] Objectively, the harm actually suffered must rise to "a level sufficiently serious to be cognizable under the Cruel and Unusual Punishment Clause of the Eighth Amendment."[23]  Sufficiently serious medical needs are those that have "been diagnosed by a physician as mandating treatment or is so obvious that even a lay person would easily recognize the necessity for a doctor's attention."[24]

To establish the subjective component of deliberate indifference, a plaintiff must "present evidence of the prison official's culpable state of mind."[25]  A claim of deliberate indifference "does not require a finding of express intent to harm,"[26] but rather that "the official acted or failed to act

---

[18] *Estelle*, 429 U.S. at 105.

[19] *See Perkins v. Kansas Dep't of Corr.*, 165 F.3d 803, 811 (10th Cir. 1999).

[20] *Estelle*, 429 U.S. at 106.

[21] *Id.* at 104.

[22] *Martinez v. Beggs*, 563 F.3d 1082, 1088 (10th Cir. 2009).

[23] *Id.* (quotations and citations omitted).

[24] *The Estate of Lockett by & through Lockett v. Fallin*, 841 F.3d 1098, 1112 (10th Cir. 2016) (quotations and citations omitted).

[25] *Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005).

[26] *Mitchell v. Maynard*, 80 F.3d 1433, 1442 (10th Cir. 1996).

despite his knowledge of a substantial risk of serious harm."[27]   Therefore, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."[28]   The Supreme Court has recognized that evidence of actual knowledge is not the only way to satisfy deliberate indifference's subjective component.[29]   If a substantial risk is:

> [L]ongstanding, pervasive, well-documented, or expressly noted by prison officials in the past, and the circumstances suggest that the defendant-official being sued had been exposed to information concerning the risk and thus "must have known" about it, then such evidence could be sufficient to permit a trier of fact to find that the defendant-official had actual knowledge of the risk.[30]

However, in matters of medical judgment, such as what drugs or treatment to prescribe, "the subjective component [of deliberate indifference] is not satisfied, absent an extraordinary degree of neglect."[31]   For example, in *Brooks v. Colorado Department of Corrections*,[32] the prisoner-plaintiff had complained several times of gluten allergies.[33]   His attending physician indicated these complaints in the prisoner's medical record, which also noted that the prisoner had once tested negative for gluten sensitivity.[34]   The defendant, a prison nurse, refused to place the prisoner on a gluten-free diet.[35]   Because the medical record "relied only on what [the prisoner]

---

[27] *Farmer v. Brennan*, 511 U.S. 825, 842 (1994).

[28] *Id.* at 837.

[29] *See id.* at 842–43.

[30] *Id.* (quotations and citation omitted).

[31] *Self v. Crum*, 439 F.3d 1227, 1232 (10th Cir. 2006).

[32] 715 F. App'x 814 (10th Cir. 2017).

[33] *Id.* at 819–20.

[34] *Id.* at 820.

[35] *Id.*

had said," the nurse did not show deliberate indifference by doubting the prisoner's "sensitivity to gluten."[36]  In the light of the above law, the Court will now consider whether there is sufficient evidence for a reasonable jury to find that any of the defendants acted with deliberate indifference.

1.      *Defendant Monir*

Hernandez claims that Monir acted with deliberate indifference by: (1) inadequately treating his UC symptoms; and (2) prescribing Colazal despite a medical history showing it to not only be ineffective but actually worsen his symptoms.  Monir does not contest that Hernandez's UC constitutes an objectively serious medical need.  Rather, Monir argues that he was unaware of any serious risk of harm to Hernandez by treating the UC symptoms with only a gluten free diet or Colazal.  Deciding which drugs to prescribe is a matter of medical judgment.  Therefore, Hernandez must show that Monir exercised "an extraordinary degree of neglect" in prescribing Colazal to succeed on his claim.[37]  Even construing the evidence in Hernandez's favor, Monir did not act with deliberate indifference.

Monir argues that Hernandez's symptoms did not present a risk of serious harm.  In making his argument, Monir relies in part on disputed facts, namely whether Hernandez's stools were bloody during the observations and whether Colazal controlled Hernandez's UC symptoms in 2011–2012.  However, to prevent summary judgment, facts must not only be disputed but also material to the case.  During both observations, Hernandez experienced no signs of pain or distress. Assuming Monir knew about the bloody stools, a reasonable jury still could not find that the scant amount of blood in the stools unaccompanied by pain or distress presented a substantial risk of

_____

[36] *Id.*

[37] *Self*, 439 F.3d at 1232 (10th Cir. 2006).

serious harm.  Regardless, Monir treated Hernandez by instructing him to maintain a gluten free diet, referring him to a gastroenterologist, and placing him under observation.  Therefore, Monir did not show an extraordinary degree of neglect by failing to treat Hernandez's UC.

As far as prescribing Colazal, Monir did so once at a gastroenterologist's recommendation. There is no doubt that Hernandez's complaints about Colazal's ill effects were well documented, as the medical record referenced Hernandez's complaints nine different times.  However, the medical record only restates Hernandez's complaints without any indication of independent tests to verify Colazal's negative effects.  Hernandez argues that the use of other drugs in 2011 and 2012 to control his UC shows that Colazal is an ineffective treatment for him.  However, although Colazal alone was initially ineffective, the medical record does not support Hernandez's unconfirmed statements that Colazal worsened his symptoms during that time or at any time thereafter.  In his Responses to Defendants' Motions for Summary Judgment, Hernandez does not cite any evidence or affidavits besides his own recorded statements to show that Colazal worsened his symptoms.  Like the nurse in *Brooks*, Monir does not show deliberate indifference simply by doubting a patient's statements.  Therefore, Monir has not violated Hernandez's Eighth Amendment rights.

2.    *Defendant Ciskey*

Like Monir, Ciskey does not contest that Hernandez's UC constitutes a serious medical need, satisfying the objective component of the deliberate indifference test.  However, Ciskey argues that Hernandez's claim fails to establish the subjective requirement of a deliberate indifference claim.  Furthermore, she contests that Hernandez merely disagrees about the appropriate treatment of his symptoms, which does not constitute an Eighth Amendment violation. Given that Ciskey at no time prescribed Colazal, Hernandez cannot claim that she caused him

harm through that prescription.  Rather, he asserts that she failed to adequately treat his UC by not prescribing other drugs, such as Humira or Entyvio.

Ciskey did not show deliberate indifference to Hernandez's UC symptoms.  At no point did she observe Hernandez in pain, distress, or showing signs of low hemoglobin or anemia that would confirm Hernandez's claims regarding the severity of his symptoms.  Even if Ciskey knew that Hernandez experienced a few bloody stools during the periods of observation, the scant amount of blood alone did not present a substantial risk of serious harm.  Furthermore, Hernandez's failure to follow his gluten free diet lessened any risk that his condition necessitated additional medical help. Therefore, even considering Hernandez's unverified statements about his condition, Ciskey was not aware of any substantial risk of serious harm to Hernandez.

Likewise, the evidence does not support Hernandez's argument that Ciskey deliberately refused to treat Hernandez's symptoms.  After acknowledging Hernandez's refusal to take Colazal, Ciskey stopped his prescription.  Pursuant to Hernandez's complaints in October of 6–8 bloody stools daily, Ciskey placed him under observation.  When Hernandez complained yet again in December, Ciskey referred him to Monir.  Hernandez's request that Ciskey should prescribe him Humira or Entyvio is simply a disagreement about the manner of treatment, not a constitutional violation.  Because Ciskey did not act with deliberate indifference to a serious medical need, Ciskey did not violate the Eighth Amendment.

3.      *Defendant Corizon*

Corporations are typically invulnerable to § 1983 claims, at least under a respondeat superior.[38]  However, if a corporation's policy is the "moving force" which causes an employee to violate a person's constitutional rights, that corporation may be held liable under § 1983.[39]

 As stated above, Hernandez submitted a request for admission to Corizon, asking that they admit to having a "preferred medications" policy requiring Monir to prescribe Colazal.[40]  Corizon failed to answer Hernandez's request for admission regarding whether they had a preferred medication policy.  Under Rule 36(a)(3) of the Federal Rules of Civil Procedure, failure to admit or deny a request for admission within 30 days results in the matter being admitted.  Therefore, Corizon has admitted that it has a preferred medication policy.[41]

However, such a policy is irrelevant because neither Monir nor Ciskey violated Hernandez's Eighth Amendment rights.  Because no employee has violated Hernandez's Eighth Amendment rights, Corizon may not be held liable under § 1983, regardless of whether its policy was the moving force behind Hernandez's treatment.

**B.     Medical Malpractice**

Ciskey, Corizon, and Monir present two alternative theories as to why this Court should grant them summary judgment over Hernandez's medical malpractice claims.    Specifically,

---

[38] *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978); *see Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1216 (10th Cir. 2003) (applying *Monell*, which involved municipal entities, to private corporations).

[39] *Burke v. Regalado*, 935 F.3d 960, 997–99 (10th Cir. 2019); *see Monell*, 436 U.S. at 694 ("[W]hen execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983.").

[40] Doc. 57, Ex. 1, at 3.

[41] As mentioned, Corizon's attorney later submitted an affidavit stating that the failure to respond was inadvertent.  However, the affidavit also states that Corizon would have admitted to the preferred medication policy.

Ciskey and Corizon move that the Court should decline to exercise supplemental jurisdiction over Hernandez's state law claims once all federal claims have been dismissed.  In contrast, Monir asks that the Court grant summary judgment because Hernandez has failed to provide expert testimony to support this claim as required by Kansas law.  The Court need only consider whether to exercise supplemental jurisdiction.[42]

Hernandez brought his medical malpractice claims under state law through 28 U.S.C. § 1367(a) because "they form part of the same case or controversy" as his Eighth Amendment claims.  However, under 28 U.S.C. § 1367(c)(3), "district courts may decline to exercise supplemental jurisdiction over a claim if . . . the district court has dismissed all claims over which it has original jurisdiction."  Because the Court grants summary judgment to Defendants on each of Hernandez's Eighth Amendment claims, the Court no longer has original jurisdiction over any of Hernandez's claims.  Therefore, the Court declines to exercise supplemental jurisdiction over all of Hernandez's medical malpractice claims.[43]

**IT IS THEREFORE ORDERED** that Ciskey and Corizon's Motion for Summary Judgment (Doc. 49) is **GRANTED**.

**IT IS FURTHER ORDERED** that Monir's Motion for Summary Judgment (Doc. 52) is **GRANTED**.

---

[42] Even though Monir did not raise the issue of supplemental jurisdiction in his brief, the Court may raise the issue sua sponte. *See Schwab v. Ingels*, 2020 WL 2037049, at *10 (D. Kan. Apr. 28, 2020) (citing *Muller v. Culbertson*, 408 F. App'x 194, 197 (10th Cir. 2011) as holding that district courts do not abuse discretion by declining to exercise supplemental jurisdiction sua sponte).

[43] Alternatively, the Court could have granted summary judgment to Monir because Hernandez failed to support his medical malpractice claims with expert testimony as required by state law. *See generally Biglow v. Eidenberg*, 308 Kan. 873, 424 P.3d 515, 525 (2018).

**IT IS SO ORDERED.**

Dated this 31st day of July, 2020.

This case is now closed.

ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE